NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                :
KAREN BURKE,                    :
                                :   CIVIL ACTION NO. 04-3031 (MLC)
        Plaintiff,              :
                                :        MEMORANDUM OPINION
        v.                      :
                                :
COMMISSIONER OF SOCIAL SECURITY, :
                                :
        Defendant.              :
_____:
```

COOPER, District Judge

The plaintiff, Karen Burke, seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner"), which denied her claims for Disability Insurance Benefits ("DIB"). See 42 U.S.C. § 405(g).  The Court will affirm the decision.

BACKGROUND

Burke applied for DIB on March 8, 2002, alleging that she had been disabled since April 1, 2000, due to back pain, obesity, hypertension, carpal tunnel syndrome, depression, and asthma. (A.R., at 53-55, 71.)  Her claim was denied on December 4, 2002, and then denied again upon her request for reconsideration on May 6, 2003.  (Id. at 25-33.)  Burke requested a hearing before an administrative law judge ("ALJ"), which was conducted on November 18, 2003.  (Id. at 14, 34.)  The ALJ issued a decision on February 9, 2004, finding that Burke was not disabled within the meaning of the Social Security Act ("SSA") at any time through the date of the decision.  (Id. at 25-26.)  The ALJ found that, although

Burke's degenerative disc disease of the lumbar spine, obesity, hypertension, carpal tunnel syndrome, depression, and asthma constituted severe impairments, at all material times Burke "ha[d] retained the residual functional capacity for light work not involving complex tasks, high-stress situations, or extensive fine manipulation in an environment free of excessive pulmonary irritants." (Id. at 21.)

Burke brought an appeal from the ALJ's decision to the Appeals Council, which denied it on May 7, 2004. (Id. at 5-7, 10.) Thus, the ALJ's decision was adopted as the Commissioner's final decision.

## DISCUSSION

### I.   Standard Of Review

The Court may affirm, modify, or reverse the Commissioner's final decision in a DIB proceeding, with or without a remand for a rehearing, but must affirm the decision if the findings of fact are supported by substantial evidence.  42 U.S.C. § 405(g); Reefer v. Barnhardt, 326 F.3d 376, 379 (3d Cir. 2003).  "Substantial evidence" is defined as less than a preponderance of the evidence but "more than a mere scintilla," i.e., such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  This standard "is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial

2

evidence." <u>Schaudeck v. Comm'r of Soc. Sec. Admin.</u>, 181 F.3d 429, 431 (3d Cir. 1999).

The Court, despite the deference given to administrative decisions, "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the . . . decision is not supported by substantial evidence." <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).  Furthermore,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

<u>Kent v. Schweiker</u>, 710 F.3d 110, 114 (3d Cir. 1983).  "That the record contains evidence which could have supported a different conclusion does not undermine" the Commissioner's decision, provided that the record contains substantial evidence supporting it.  <u>Rivera v. Shalala</u>, No. 94-2740, 1995 WL 495944, at *3 (D.N.J. July 26, 1995).  But the Commissioner must address and reconcile medical evidence that would support a contrary conclusion.  <u>Schaudeck</u>, 181 F.3d at 434-35.

## II.  Determining Eligibility For Disability Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

3

for a continuous period of not less than 12 months."  42 U.S.C. §
423(d)(1)(A).  An individual is disabled if the individual's
"physical or mental impairment or impairments are of such severity
that [the individual] is not only unable to do [the] previous
work but cannot, considering . . . age, education, and work
experience, engage in any other kind of substantial gainful work
which exists in the national economy."  Id. § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a
claimant is "disabled."  First, the ALJ determines whether the
claimant is currently engaged in "substantial gainful activity."
20 C.F.R. § 404.1520(a)(4)(I).  If the claimant is so engaged,
then the ALJ will find that the claimant is not disabled and the
DIB application will be denied.  Id. § 404.1520(b).  If the
claimant is not employed, then the ALJ will consider the medical
severity and duration of the claimant's impairment or combination
of impairments in the second step.  Id. § 404.1520(a)(4)(ii).  A
"severe impairment" significantly limits the claimant's physical
or mental ability to do basic work activities, including, inter
alia, (1) sitting, lifting, and speaking, (2) responding
appropriately to supervision and co-workers, and (3)
understanding, carrying out, and remembering instructions.  Id.
§§ 404.1521(a)-(b), 416.921(a)-(b).  A claimant not meeting this
requirement is not disabled.  Id. § 404.1520(c).  Thus, the
second step requires a threshold-level demonstration of severe

4

impairment without consideration of the claimant's age, education, and work experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

The ALJ, if the claimant shows severity, then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the Code of Federal Regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  The claimant is presumed to be disabled if the impairment meets or equals a listed impairment, and the evaluation ends at this stage.  Id. § 404.1520(d).  If the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four.  Id. § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past.  Id. § 404.1520(a)(4)(iv).  The claimant will not be considered disabled if the claimant can resume the former occupation.  Id.  If the claimant cannot resume previous work, then the ALJ moves to step five and considers the claimant's ability to perform other work that is available in the national economy.  Id. §§ 404.1520(a)(4)(v), 404.1520(e).  This inquiry requires the ALJ to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  Id. A claimant will be found disabled if the claimant cannot adjust to any other work in the national economy.  Id. § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process.  Plummer v. Apfel, 186

F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this burden,
the burden shifts to the Commissioner in step five to show that
the claimant has the transferable skills that would allow
engagement in alternative substantial gainful employment.  Id.

**III. Analysis**

Burke generally asserts that the Commissioner's findings are
not supported by substantial evidence and the ALJ's decision
contains errors of law.  (Pl. Br., at 1.)  Burke argues that the
Court should reverse and remand the case, as the ALJ erred by (1)
failing to articulate a reason for finding that her severe
impairments did not meet or equal in severity one or more of the
Listings; (2) determining that she had a RFC for light work and
could perform her past relevant work as a receptionist; (3)
failing to sufficiently consider the reports of her treating
physician; and, (4) failing to properly evaluate her subjective
complaints of pain.  (Id.)

The ALJ, in determining whether a claimant is entitled to
receive DIB, must consider all evidence and give some reason for
discounting the evidence rejected.  Plummer, 186 F.3d at 429.  An
ALJ need not engage in a comprehensive analysis when explaining
why probative evidence is being rejected.  Cotter v. Harris, 650
F.2d 481, 482 (3d Cir. 1981).  Rather, a short sentence or
paragraph explaining the basis upon which the ALJ is rejecting
evidence will suffice.  Id.  An ALJ is not required to undertake

an exhaustive discussion of all the evidence, but must consider
and evaluate the medical evidence in the record consistent with
an ALJ's responsibilities under the regulations and case law.
Hernandez v. Comm'r of Soc. Sec., No. 03-2540, 2004 WL 188089, at
*1 (3d Cir. Jan. 30, 2004); Fargnoli v. Massanari, 247 F.3d 34,
42 (3d Cir. 2001).  The ALJ "may choose whom to credit" when a
conflict in the evidence exists, but may not "reject evidence for
no reason or for the wrong reason."  Plummer, 186 F.3d at 429.
This policy allows the Court to properly review the ALJ's
decision to determine whether the ALJ's decision is supported by
substantial evidence.  Cotter, 642 F.2d at 705.  Without an
indication as to what evidence the ALJ considered or rejected,
the Court "cannot tell if significant probative evidence was
credited or simply ignored."  Id.

### A.   ALJ Properly Analyzed Burke's Impairments With Listings

Burke contends that the ALJ erred at step three by failing to
determine that her impairments equaled or met one of the Listings.
(Pl. Br., at 16.)  Burke also argues that the ALJ failed to "fully
discuss the Listing[s] at [s]tep 3" by "match[ing] the medical
evidence to the specific Listings requirements for both the
individual impairments and combined impairments."  (Id. at 18.)

Burke's argument that the ALJ failed to fully analyze the
Listings at step 3 is without merit.  The ALJ explained that "[n]o
treating or examining physician has mentioned findings equivalent
in severity to the criteria of any listed impairment."  (A.R. at

15.)  The ALJ then gave "particular scrutiny" to five listings:
(1) 1.04 Disorders of the spine; (2) 3.03 Asthma; (3) 4.03
Hypertensive cardiovascular disease; (4) 11.08 Spinal cord or
nerve root lesions due to any cause; and (5) 12.04 Affective
disorders.  (Id.)[1]  The ALJ did not identify the requirements of
these Listings, but did explain how Burke's impairments failed to
meet or equal these Listings.  (Id. at 15, 19.)  Thus, the ALJ
did not summarily reject the Listings as a basis of disability.

    The ALJ also did not err in failing to match the medical
evidence to the Listings.  Burke's reliance on Burnett v.
Commissioner of Social Security Admin., 220 F.3d 112 (3d Cir.
2000), to support her argument is misplaced.  The ALJ need not
"use particular language or adhere to a particular format in
conducting his analysis."  Jones v. Barnhardt, 364 F.3d 501, 505
(3d Cir. 2004).  Rather, the ALJ need only state a "sufficient
explanation to provide meaningful review of the step three
determination."  Id.  Further, even if the ALJ does not identify
or analyze the most relevant listing, the ALJ meets the Burnett
standard by clearly evaluating the available medical evidence in
the record and then setting forth that evaluation in the opinion.
Id.  Specifically, the ALJ considered, inter alia, (1) a May 1998
electrodiagnostic study of Burke's hands, (2) records of Burke's

---

[1] Burke's counsel at the hearing claimed that she met or
equaled Listings 1.05 (sic) and 12.04.  (A.R. at 15.)

admittance to a hospital from August 28, 2002 until September 6, 2002, (3) medical records from Burke's treating doctor, Antonios J. Tsompanidis, D.O., (4) medical reports from He-Yeun Kahng, M.D.'s examination of Burke on October 29, 2002, (5) reports from a psychiatric evaluation of Burke by Joyce Schreiber, Ed. D., on April 7, 2003, and (6) the medical report of Floyd Krengel, M.D., dated July 11, 2003.  (A.R. at 15-17.)  Here, although the ALJ did not recite the requirements of each of the five Listings considered, the decision contains a thorough evaluation of the available medical evidence in the record to create a sufficient basis for judicial review.

The ALJ's determination at step 3 was also supported by substantial evidence.  The ALJ considered Listings 1.04, 3.03, 4.03, 11.08, and 12.04.  (A.R. at 15.)  Listing 1.04A requires a disorder of the spine resulting in the compromise of a nerve root or the spinal cord with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of spinal motion, motor loss accompanied by sensory or reflex loss and positive straight leg raising test."  20 C.F.R. § 404, Subpt. P, App. 1, § 1.04A.[2]  Although Burke fails to identify medical

---

[2] As the ALJ noted, Burke's hearing counsel claimed that she satisfied Listing 1.05C.  (A.R. at 49, 252.)  But Listing 1.05C was replaced by Listing 1.04, effective February 19, 2002.  See Caruso v. Comm'r of Soc. Sec., 99 Fed.Appx. 376, 379 n.2 (3d Cir. 2004) (explaining listings amended, and "the current Listing relevant to back impairments is now Listing 1.04").

evidence in the record that satisfies the requirements of Listing 1.04A, there is potentially evidence of a positive straight leg raising test and limitation of spinal motion in Krengel's report dated July 11, 2003.  (A.R. at 241-42.)  The record, nonetheless, contains no evidence of "motor loss" to satisfy Listing 1.04A. The medical report from Burke's September 25, 2002 examination at the hospital found that Burke had "full ROM."  (A.R. at 187.) Further, Kahng examined Burke on October 29, 2002, and noted that (1) "[m]otor examination shows no apparent focal motor weakness," and (2) "[t]he lower extremities show well-preserved range of motion bilaterally with no focal motor or sensory abnormality." (A.R. at 206-07.)  Therefore, Burke failed to satisfy her burden of production to qualify her under Listing 1.04A.

Listing 1.04C requires a disorder of the spine resulting in compromise of a nerve root or the spinal cord with "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in [Listing] 1.00B2b."  20 C.F.R. § 404, Subpt. P, App. 1, § 1.04C.  Listing 1.00B2b provides that

> to ambulate effectively, individuals must be capable of
> sustaining a reasonable walking pace over a sufficient
> distance to be able to carry out activities of daily
> living.  They must have the ability to travel without
> companion assistance to and from a place of employment or
> school.  Therefore, examples of ineffective ambulation

10

include, but are not limited to, the inability to walk
without the use of a walker, two crutches or two canes,
the inability to walk a block at a reasonable pace on
rough or uneven surfaces, the inability to use standard
public transportation, the inability to carry out routine
ambulatory activities, such as shopping and banking, and
the inability to climb a few steps at a reasonable pace
with the use of a single hand rail.  The ability to walk
independently about one's home without the use of
assistive devices does not, in and of itself, constitute
effective ambulation.

20 C.F.R. § 404, Subpt. P, App. 1, § 1.00B2b.

The record shows that Tsompanidis indicated in Burke's RFC assessment that she suffered from "foraminal stenosis."  (A.R. at 245.)  However, the record seemingly contains no reference — such as in Tsompanidis's treatment records from December 27, 1999 to August 12, 2002 — to a diagnosis of spinal stenosis.  Regardless, Burke provided no evidence that she had an "inability to ambulate effectively" as defined by Listing 1.00B2b.  Burke testified at the hearing that, <u>inter</u> <u>alia</u>, she (1) did not use a cane all of the time, (2) only used a cane if she had to walk for "long periods," (3) did not use a cane to ambulate in her house.  (A.R. at 269.)  Thus, Burke failed to satisfy her burden of production to qualify her under Listing 1.04C.

Listing 11.08 covers "[s]pinal cord or nerve root lesions, due to any cause with disorganization of motor function as described in 11.04B."  20 C.F.R. § 404, Subpt. P, App. 1, § 11.08.  Listing 11.04B describes "[s]ignificant and persistent disorganization of motor function in two extremities, resulting

11

in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).” Id. § 11.04B.  Listing 11.00C provides that “[p]ersistent disorganization of motor function” takes the form of

> paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment.  The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

Id. § 11.00C.  The ALJ explained that Burke presented no evidence of disorganization of motor function.  (A.R. at 15.)  Burke has not referenced and the Court has not found any medical evidence in the record that Burke experiences disorganization of motor function as described in Listings 11.04B and 11.00C.

Listing 12.04 covers “Affective Disorders [c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.”  20 C.F.R. § 404, Subpt. P, App. 1, § 12.04.  Listing 12.04’s requirements are met if the claimant shows

> [(A)] [m]edically documented persistence, either continuous or intermittent, of one of the following: [(1)] Depressive syndrome . . .; [(2)] Manic syndrome . . .; or [(3)] Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); [and] [(B)] [r]esulting in at least two of the following: [(1)] Marked restriction of

> activities of daily living; [(2)] Marked difficulties in maintaining social functioning; [(3)] Marked difficulties in maintaining concentration, persistence, or pace; or [(4)] Repeated episodes of decompensation, each of extended duration.

Id. The requirements of Listing 12.04 are also met if the claimant has a

> [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: [(1)] Repeated episodes of decompensation, each of extended duration; [(2)] A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or [(3)] Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Id. § 12.04C.

The ALJ found that Burke suffered from a depressive disorder with the meaning of Listing 12.04A1. (A.R. at 19.) But the ALJ determined that Burke did not have two marked restrictions of the criteria in Listing 12.04B. (Id. at 15.) Instead, the ALJ found that Burke had only "slight restrictions of activities of daily living; slight difficulties in maintaining social functioning; slight deficiencies of concentration, persistence or pace; and no episodes of decompensation." (Id. at 19.) The Court finds that the ALJ's determination that Burke did not have two "marked" restrictions as described by Listing 12.04B is supported by substantial evidence.

13

A "marked" restriction is "more than moderate but less than extreme." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00C. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." Id. The ALJ found no evidence of decompensation and the Court has found no references in the record to episodes of decompensation. The ALJ found only slight restrictions in activities of daily living. "Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." Id. The ALJ noted that, inter alia, Burke (1) prepared meals including breakfast and dinner, (2) went food shopping with her son (although her son lifted heavy items), (3) drove to her daughter-in-law's house, (4) managed her son's finances, (5) used the telephone, but not for long periods of time because her hands went numb, (6) had difficulty writing, but did write out bills and handled her family's finances, and (7) cannot sweep due to pain in her back. (Id. at 18-19.) The Court further notes that Burke stated that "combing [her] hair [is] hard," but she had no problem washing her hair. (Id. at 279-80.) Although Burke

14

testified that she needed assistance from her son with laundry, making the bed, and shopping, the Court finds that substantial evidence supports the ALJ's determination that Burke did not have a "marked" impairment in performing activities of daily living.

The ALJ also found that Burke had a slight impairment in "social functioning," which "refers to your capability to interact independently, appropriately, effectively, and on a sustained basis with other individuals."  20 C.F.R. § 404, Subpt. P, App. 1, § 12.00C2.  Social functioning includes "the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords or bus drivers."  Id.  A claimant "may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation."  Id.

Burke testified that she did not go out of her home except occasionally to shop for food or visit the homes of her children. (A.R. at 269, 274, 284.)  She would visit her children about once per week.  (Id. at 269.)  She stated that she had some problems using the telephone because of hand pain.  (Id. at 282.)  Burke also maintained that she was unable to crochet, paint, or go to the park with her grandchildren because of her impairments.  (Id. at 289.)  Although Burke stated that her impairments caused what could be characterized as "social isolation," the Court finds that substantial evidence supports the ALJ's determination that Burke did not have a "marked" impairment in social functioning.

The ALJ also found that Burke only had slight deficiencies of concentration, persistence or pace.[3] "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00C3.  "Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings."  Id.  Also, "major limitations in this area can often be assessed through clinical examination or psychological testing."  Id.

Burke testified that her "memory is terrible." (A.R. at 275.) Schreiber conducted an adult psychiatric evaluation on April 7, 2003, in which she found that, inter alia, (1) Burke showed signs of anxiety, and (2) Burke's "attention and concentration were intact[, s]he could count forwards and backwards, do simple calculations, and serial 3s." (Id. at 220.)  As to Burke's memory skills, Schreiber indicated that Burke's "recent and remote memory skills were mildly impaired most likely secondary to some emotionality.  She could recall 3/3 objects immediately

---

[3]  Although the Court has already determined that the ALJ had sufficient evidence to conclude that Burke did not have (1) a marked restriction of activities of daily living or maintaining social functioning, or (2) repeated episodes of decompensation, the Court will discuss the ALJ's conclusion that Burke had only slight deficiencies of concentration, persistence or pace for the sake of completeness.

and 2/3 after 5 minutes.  She could do digits forwards of 5 and digits backwards of 4."  (Id.)  Schreiber filled out a mental RFC assessment and indicated her opinion that Burke had "moderate" deficiencies in maintaining concentration, persistence or pace. (Id. at 237.)  The record contains no other mental evaluations or references to Burke's abilities in work settings.  The Court finds that substantial evidence supports the ALJ's determination that Burke did not have a marked limitation in concentration, persistence or pace.

The ALJ found that Burke failed to satisfy Listing 3.03, as she "does not have chronic bronchitis as set forth in 3.02A nor is there evidence of the requisite attacks as set forth in 3.03B." (Id. at 15.)  Listing 3.03 covers asthma with either (1) chronic asthmatic bronchitis, or (2) attacks occurring at least once every 2 months or at least 6 times per year.  20 C.F.R. § 404, Subpt. P, App. 1, § 3.03.  The record lacks medical findings that Burke has chronic asthmatic bronchitis or the requisite number of attacks. Thus, the ALJ's decision was based on substantial evidence.

The ALJ, as to hypertension, found that Burke's impairments failed to meet Listing 4.03 as there was no evidence of end organ damage.  The Court finds that the ALJ's decision was supported by substantial evidence.  See Sassone v. Comm'r of Soc. Sec., 165 Fed.Appx. 954, 957 (3d Cir. 2006); see, e.g., Washington v. Barnhardt, 424 F.Supp.2d 939, 956 (S.D. Tex. 2006) (explaining

17

criteria for Listing 4.03 not met, as high blood pressure had not resulted in significant end organ damage).[4]

**B.    ALJ Properly Analyzed Burke's Subjective Complaints**

Burke argues that the ALJ failed to properly consider her subjective complaints of pain under 20 C.F.R. § 404.1529.  (Pl. Br., at 22-24.)  Burke's primary subjective complaints are chronic pain, inability to sit or stand, fatigue, depression, and mental and environmental limitations.  (Id.)  Burke argues that this additional pain was sufficiently disabling to prevent her from resuming even sedentary work.

A claimant's symptoms, including complaints of pain, are considered when making a disability determination, to the extent that they can "reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a).  The ALJ has discretion in weighing a claimant's credibility when evaluating subjective complaints.  Edwards v. Comm'r of Soc. Sec., 989 F.Supp. 657, 660 (D.N.J. 1998).  The subjective complaints must be viewed in light of the medical evidence in the record, and objective medical evidence must support the claimant's complaints.  Id.  "Subjective symptomology cannot, by itself, be the basis for a finding of disability."

---

[4] There is no evidence that Burke was diagnosed with either chronic heart failure or ischemic heart disease, or had problems with her vision, renal function or central nervous system attributed to hypertension.  There is no indication that Burke's high blood pressure is not well-controlled with medication, or that she has any significant side effects from the medication.

Joyce v. Shalala, No. 94-01901, 1997 WL 998582, at *6 (D.N.J. Oct. 17, 1997); 20 C.F.R. § 404.1529(c)(2).

When a claimant complains of pain and shows the existence of a medical impairment that could reasonably be expected to produce the pain, the ALJ must determine the extent to which the claimant is "accurately stating the degree of pain or the extent to which he or she is disabled by it." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). The ALJ may consider (1) daily activities; (2) the duration, frequency, location, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate [the] pain or other symptoms"; (5) "treatment, other than medication . . . received for relief of [the] pain or other symptoms"; (6) other measures used to relieve the pain or symptoms; and (7) other factors on "functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 416.929(c)(3). A claimant's subjective pain complaints must be given "great weight" when they are supported by medical evidence, and cannot be discounted unless contrary medical evidence exists. Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993).[5]

---

[5] See Turby v. Barnhardt, 54 Fed.Appx. 118, 121-22 (3d Cir. 2002) (failing to draw distinction between assessment of plaintiff's subjective complaints of physical impairments versus mental impairments); Rotshteyn v. Massanari, 158 F.Supp.2d 525, 533-34 (E.D. Pa. 2001) (analyzing plaintiff's subjective complaints of physical and mental impairments under same standard as applied to assessment of subjective complaints of physical impairments).

The ALJ considered Burke's subjective pain complaints and all testimony and evidence in the record.  (A.R. at 15-20.)  But the ALJ concluded that Burke's subjective complaints were not credible to the incapacitating extent alleged.  (Id. at 19-20.)[6]

The ALJ found that Burke's use of a cane to walk was not supported by medical documentation.  (Id. at 20.)  The ALJ also noted that Burke, despite allegations of depression and having insurance coverage, had not sought treatment from a mental health professional.  (Id.)  The ALJ further stated that Burke performed a variety of daily activities, including doing laundry, cooking, supermarket shopping, and driving short distances.  (Id.)  Burke also testified that she could dress, bathe, and groom herself.  (Id. at 220.)  Burke stated that she would (1) prepare simple meals, (2) perform household chores such as loading a dishwasher, washing clothes, sweeping floors, cleaning sinks and toilets, paying bills, food shopping, driving short distances, and managing the finances of her adult disabled son.  (Id. at 92-93, 272, 275.)  Burke testified that she went of her house about once per week, and that she generally spent her time at home sitting and watching television.  (Id. at 92-93, 274-75.)

The ALJ fully considered the relevant evidence concerning Burke's subjective complaints, and did not limit the analysis to

---

[6]  The Court generally defers to an ALJ's credibility determination because the ALJ is present at the hearing and can assess a claimant's demeanor.  Reefer, 326 F.3d at 380.

whether there were objective medical findings supporting the subjective complaints.  Accordingly, the ALJ's decision is supported by substantial evidence, and the ALJ did not err in not according "great weight" to Burke's subjective complaints.

### C.   ALJ Provided Adequate Analysis at Step Four

Burke claims that the ALJ erred in determining that her RFC did not prevent her return to prior work at step four.  (Pl. Br., at 18.)  Burke contends that neither the demands of her prior relevant work, nor the demands of such work as performed in the national economy, were identified in the decision.  (Id. at 22.)  Burke also argues that the ALJ erred in failing to consider her pain, fatigue, postural limitations, depression, and mental and environmental limitations, when determining her RFC.  (Id.)  Burke further claims that the ALJ improperly assigned less than significant weight to her medical reports, including the RFC assessment by Tsompanidis and medical report by Krengel.  (Id. at 19, 26.)  Burke asserts that the ALJ committed a "critical error here [(at step four)] because the [vocational expert] testified that she was disabled at Step 5."  (Id. at 23.)

An ALJ — in deciding whether a claimant has the functional capacity to return to past relevant work — considers a claimant's description of the requirements of the former work, which of those requirements can no longer be met, the medical evidence establishing how the impairment limits the ability to meet those requirements,

and in some cases, supplementary or corroborative evidence (<u>e.g.</u>,
the Dictionary of Occupational Titles). <u>Burnett</u>, 220 F.3d at 123
(citing S.S.R. 82-62).  The ALJ here described Burke's past work
as a receptionist at various jobs for about a ten-year period
before 1997.  (A.R. at 18.)  The ALJ also concluded that Burke
retained the RFC for "the exertional demands of light work not
involving complex tasks, high-stress situations, or extensive
fine manipulation."  (<u>Id.</u> at 20.)  The ALJ noted that Burke's
claims of depression do not pose any limitations on her RFC,
"other than to preclude her from performing complex tasks and
being involved in high-stress situations."  (<u>Id.</u>)

The ALJ also determined that Krengel's disability assessment
and Tsompanidis's RFC assessment were unsupported by their
objective findings and the record as a whole.  (<u>Id.</u> at 18.)
Krengel's analysis contained no RFC assessment and, based on
Burke's statements and his objective examination, concluded that
she "satisfies the criteria for disability evaluation under Social
Security on an orthopedic basis."  (<u>Id.</u> at 241-43.)  The ALJ
properly assigned Krengel's opinion as to Burke's disability "no
significant weight" as the determination as to whether a claimant
is disabled is a decision ultimately reserved for the ALJ.  20
C.F.R. § 404.1527(a). Therefore, the ALJ was not required to
accept Krengel's opinion.

The ALJ also properly evaluated Tsompanidis's RFC assessment
in view of the medical evidence in the record.  The SSA, in

deciding whether a claimant is disabled, "review[s] all of the medical findings and other evidence that supports a medical source's statement that [a claimant is] disabled."  20 C.F.R. § 404.1527(e)(1).  Nonetheless, merely because a medical source states that a claimant is "disabled" or "unable to work" does not necessarily mean that the SSA will determine the claimant to be disabled.  Id.  Treating physicians' opinions on the nature and severity of a plaintiff's impairment are given controlling weight only when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record.  Id. § 404.1527(d)(2).

An ALJ must review all of the medical findings and other evidence presented in support of a physician's opinion that a claimant is totally disabled.  Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994).  In rejecting a treating physician's testimony, an ALJ may not (1) "make speculative inferences from medical reports;" (2) rely on the ALJ's "own expertise against that of a physician who presents competent medical evidence;" or (3) "reject evidence for no reason or for the wrong reason."  Plummer, 186 F.3d at 429.  Thus, an ALJ may not reject a treating physician's testimony based solely on the ALJ's "own credibility judgments, speculation or lay opinion."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  If, after considering all relevant evidence, an ALJ decides to credit other evidence over a treating physician's

23

testimony, the reason for doing so must be explained.  <u>Plummer</u>,
186 F.3d at 429.  An ALJ may only outright reject the medical
judgment and opinion testimony of a treating physician if the
opinion is contradicted by medical evidence in the record.  <u>Id.</u>

The ALJ here sufficiently considered and explained why he
assigned "no significant weight" to Tsompanidis's RFC assessment.
Tsompanidis's assessment indicates that Burke had foraminal
stenosis in the lumbar spine and degenerative disc disease.  (A.R.
at 245.)  As a result, Tsompanidis determined that Burke (1) could
occasionally lift 10 pounds, (2) frequently lift less than 10
pounds, (3) stand or walk less than 2 hours in an 8-hour workday,
and (4) sit for a total of less than about 6 hours in an 8-hour
workday.  (<u>Id.</u> at 245.)  Tsompanidis also noted that Burke's
ability to push or pull was limited in her lower extremities, and
that she had no manipulative limitations, but that she did have
some environmental limitations because of her asthma.  (<u>Id.</u> at
245-48.)  But Tsompanidis, with the exception of referring to an
MRI that showed Burke's impairments were "worsening," provides no
other medical evidence or test results that validated his
conclusions regarding the extent of her incapacitation.  (<u>Id.</u>)[7]

Although Tsompanidis provided the aforementioned RFC
assessment, the ALJ properly evaluated Burke's condition in the

_____

[7]  There is an MRI report provided by Middletown Medical
Imaging included in the record.  (A.R. at 165.)  However, the
majority of the text of the report is not viewable because the
copy contains a note covering said text.  (<u>Id.</u>)

24

context of the entire medical record.  <u>Adorno</u>, 40 F.3d at 48.
Tsompanidis, despite being Burke's treating physician and putting
notations in his medical records indicating Burke's carpal tunnel
problems and pain in her hands, found no manipulative limitations
whatsoever.  Also, although Tsompanidis placed significant
limitations on Burke's ability to lift, sit, stand, and walk, the
medical documentation did not support the extent of incapacity
asserted.  As these conclusions were "inconsistent with the
preponderance of the medical evidence," the ALJ accordingly
assigned Tsompanidis's evaluation "no significant weight."  (<u>Id.</u>)

The ALJ also discussed the testimony of the vocational
expert, who stated that someone with the aforementioned RFC could
perform the job of receptionist as Burke previously performed it.
(<u>Id.</u>)  The ALJ also described the vocational expert's
determination that "[i]f the exertional part of the [RFC] were
reduced to sedentary work, the person would still be able to do
the receptionist job."  (<u>Id.</u>)  The ALJ sufficiently articulated
findings, including the opinion of the vocational expert, that
Burke's RFC permitted her to meet the specific physical
requirements of her former employment, and thus the holding was
supported by substantial evidence.

**CONCLUSION**

The Court, finding that the Commissioner's decision was supported by substantial evidence, will affirm the Commissioner's decision denying Burke's DIB claim.  The Court will issue an appropriate order and judgment.


  s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge